**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | | |
|---|---|---|
| VERNON JERMAINE MILLS,<br>Plaintiff,<br><br>v.<br><br>ESKER TATUM, ET AL.,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:24-cv-1447 (RDA/WBP) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants Esker Tatum's and Ralph Stith's Motions to Dismiss, Dkt. Nos. 31, 50, Vernon Jermaine Mills' ("Mills") Amended Complaint alleging that Mills was subjected to conditions of confinement that violated his Eighth and Fourteenth Amendment rights while in the custody of the Virginia Department of Corrections ("VDOC") at the Lawrenceville Correctional Center ("Lawrenceville"). Dkt. No. 21. The Amended Complaint alleges four claims:

1) On January 4, 2024, Tatum violated Mills' Eighth Amendment rights by locking Mills in a small shower for over seven hours, during which he was forced to urinate on himself and was denied a toilet, water, and a bed. Dkt. No. 21 at 7-8.
2) On January 10 through 14, 2024, Tatum violated Mills' Eighth Amendment rights by locking him in a cell with nothing but the clothes on his back in retaliation for Mills filing a complaint about Tatum locking him in a shower cell for over seven hours and Tatum filing a fabricated disciplinary charge. *Id.* at 8.
3) On January 12, 2024, Stith violated Mills' Eighth Amendment rights by not acting when he saw that Mills' cell had flooded with raw sewage. *Id.* at 8-9.
4) On January 4, 2024, Tatum violated Mills' Fourteenth Amendment Due Process rights by locking Mills in the segregation unit shower cell for no reason; and on January 10, and 22, 2024, placing Mills in segregation without notice, a hearing, and or an opportunity to contest and in disregard of the disciplinary hearing procedures—essentially depriving him of his "liberties" without a valid reason. *Id.* at 9.

On May 20, 2026, and August 4, 2026, the Court advised Mills of his rights under *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975), and he responded on July 1, 2026, and September 3, 2026.

Dkt. Nos. 42, 54. The matter is now ripe for adjudication.

**I. Standard of Review**

Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Sumner v. Tucker*, 9 F. Supp. 2d 641, 642 (E.D. Va. 1998). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990) (a pleading must be presented "with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search" of the pleader's claims "without untoward effort"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

In this context of a Rule 12(b)(6) motion, "the reviewing court must determine whether the complaint alleges sufficient facts 'to raise a right to relief above the speculative level' and 'to state a claim to relief that is plausible on its face.'" *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555). While all well-pleaded material facts

are accepted as true and all inferences are drawn in the plaintiff's favor. *id.*, that presumption of truth is not applied "to 'conclusory statements' and 'legal conclusions'" in a complaint. *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). Further, a court may also consider "documents that are explicitly incorporated into the complaint by reference," documents "attached to the complaint as exhibits," and documents attached to a motion to dismiss as long as they are "integral to the complaint" and "authentic." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (internal quotation marks omitted). "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached, the exhibit prevails." *Id.* (quoting *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) (ellipses omitted)). The Court may also take judicial notice of "matters of public record." *Goldfarb*, 791 F.3d at 508-09.

Where a complaint is filed by a prisoner acting *pro se*, however, that complaint must be construed liberally regardless of how unskillfully it is pleaded. *Haines v. Kerner*, 404 U.S. 519 (1972). A *pro se* litigant is therefore not held to the strict pleading requirements demanded of attorneys. *Estelle v. Gamble*, 429 U.S. 97, 106-07 (1976); *see also Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023) ("This Court reads *pro se* pleadings to raise the strongest arguments that they suggest, and we consider whether a *pro se* civil rights plaintiff is entitled to relief under any legal theory that his factual allegations might plausibly convey.").

## II. Statement of Facts[1]

1. On January 4, 2024, Tatum was walking through a general population pod when

[1] The statement of facts is based upon Wood's Amended Complaint, exhibits, and admissions made in pleadings. To the extent Wood's documents are inconsistent with his Amended Complaint, "the exhibit prevails." *Wells v. Fuentes*, 126 F.4th 882, 893 n. 10 (4th Cir. 2025) (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)).

Mills asked Tatum to have someone turn the hot water on and the air conditioning off because he had been without hot water for two months. Dkt. No. 21 at 5. Tatum responded that he had "a warm spot for" Mills and had him removed from his cell. *Id.* Mills was taken to segregation and placed in a poorly ventilated shower cell for seven hours (11:00 p.m. to 6:08 a.m.).

2. While in the shower cell, Plaintiff was denied a toilet, bed, and water and had to urinate on himself. Plaintiff filed a complaint about his treatment and he alleges that Tatum retaliated against him for doing so. He asserts that Tatum's response to the complaint was to fabricate reasons for Mills' detention (and with no cells available; Mills was once again placed in a shower cell, this time for one hour).

3. Mills further asserts that Tatum fabricated a disciplinary charge against Mills that was "debunked" by video evidence. *Id.* at 5-6.

4. On January 10, 2024, Tatum had Mills removed from general population. Mills was handcuffed and escorted to a new cell and told to only bring his mattress and his pillow. Tatum was waiting for Mills at the new cell and Mills was locked in a cell with another inmate for five days, with no hygiene products. *Id.* at 6.

5. On January 12, 2024, Mills alleges that his cell was flooded by "raw sewage" that entered the cell under the door from 3:45 p.m. through 10:50 p.m. Around 4:55 p.m., Stith walked past the cell, Mills asked Stith to get him "out of this sewage." Stith walked away. Mills had no sanitizer or change of clothes. *Id.*

6. On January 14, 2024, Mills was given hygiene products and a change of clothes. Tatum's secretary told Mills he had been moved to the cell because Tatum had decided to create his own personal administrative segregation area. *Id.*

7. Tatum's actions caused Mills to seek mental health from a psychologist who diagnosed Mills with acute stress. *Id.* at 7.

**III. Analysis**

In their Motions to Dismiss, Tatum seeks to dismiss Claim 4 (conditions of confinement) and Stith seeks to dismiss Claim 3 (deliberate indifference to a known danger). "Although 'the Constitution does not mandate comfortable prisons,' it does mandate humane ones." *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021) (*Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id.* (citations omitted). "By prohibiting cruel and unusual punishment, the Eighth Amendment imposes duties on prison officials to 'provide humane conditions of confinement' and 'ensure that inmates receive adequate food, clothing, shelter, and medical care." *Thomas*, 2 F.4th at 719 (quoting *Farmer*, 511 U.S. at 832). To that end, they must also be provided with '"reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities.'" *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019) (quoting *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016)). On the subjective prong, the prisoner must allege that the defendant acted with deliberate indifference to his health or safety. *Farmer*, 511 U.S. at 834. To satisfy this standard, "the official must have actually known of and consciously disregarded a substantial risk of harm." *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022).

It is undisputed that prisoners cannot be held in "shockingly unsanitary cells." *Taylor v. Riojas*, 592 U.S. 7, 7-8 (2020) (prisoner held in deplorable conditions with feces and raw sewage

everywhere for 'six full days'); *see also Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (collecting cases establishing that holding inmates in a feces and blood covered cell without a working sink or toilet for anywhere from thirty-six hours to six days was inhumane). "Causing a man to live, eat and perhaps sleep in close confines with [. . .] human waste is too debasing and degrading to be permitted." *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972). *See also Hardeman v. Curran*, 933 F.3d 816, 824 (7th Cir. 2019) (citing *LaReau*). However, both duration and mitigation play a part in the Eighth Amendment analysis. *See, e.g., Taylor*, 592 U.S. at 7-10 (case remanded to determine whether conditions were "compelled by necessity or exigency" and whether they could have been "mitigated, either in degree or duration"); *Johnson*, 29 F.4th at 904 ("frequency, severity, [and] duration of the unsanitary cell conditions" must be considered); *Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997) ("[T]he duration of the condition . . . determines whether the conditions of confinement are unconstitutional."); *Stephens v. Cottey*, 145 F. App'x 179, 181 (7th Cir. 2005) ("As is the case under the Due Process Clause, a short-term deprivation is less serious for Eighth Amendment purposes than a long-term one.") (collecting cases)).

Turning first to the allegations with respect to Stith, the Amended Complaint sets forth allegations regarding the duration of the sewage flooding ("sewage") into Plaintiff's cell. Stith argues, in reliance on a form attached to Mills' Amended Complaint, that maintenance "fixed the issue." Dkt. No. 47 at 3. Stith's Motion to Dismiss does not otherwise address the allegation against him, which specifically asserts that Stith failed to act after he saw the sewage. Indeed, the document upon which Stith relies was dated February 26, 2024, which was more than six weeks after Mills alleges Stith observed the sewage in his cell and failed to act. To be sure, there is no

indication of when the sewage issue was "fixed." Thus, the current factual context of the allegation does not support dismissal, and Stith's Motion to Dismiss will be denied.[2]

Tatum's argument in support of his Motion to Dismiss is limited to Claim 4, which Tatum characterizes as an Eighth Amendment cruel and unusual punishment claim and not a due process claim. That argument has no merit as Claim 4 expressly alleges a due process violation whereby Tatum is alleged to have violated Mills' Fourteenth Amendment Due Process rights by locking Mills in the segregation unit shower cell and later placing Mills in segregation without notice, a hearing, and or an opportunity be heard. Essentially, Mills claims that Tatum deprived him of his "liberties" without a valid reason. Dkt. No. 21 at 9; *see Williamson v. Stirling*, 912 F.3d 154, 176-77 (4th Cir. 2018) (finding that placement in administrative segregation or solitary confinement "requires that the prison officials provide a convicted prisoner 'some notice of the charges against him and an opportunity to present his views' to the deciding official, although the opportunity may be provided after the fact") (quoting *Hewitt v. Helms*, 459 U.S. 460, 474 (1983). Mills allegations are sufficient at this stage to allege a due process violation. Accordingly, Tatum's Motion to Dismiss is denied.

---

[2] "Causing a man to live, eat and perhaps sleep in close confines with [. . .] human waste is too debasing and degrading to be permitted." *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972); *see also Hardeman,* 933 F.3d at 821 (recognizing clearly established right of inmates "not to be forced to live surrounded by their own and others' excrement"); *Vinning-El*, 482 F.3d at 924 (collecting cases establishing that holding inmates in a feces and blood covered cell without a working sink or toilet for anywhere from thirty-six hours to six days was inhumane); *Holliday v. Lakin*, No. 15-CV-290, 2017 WL 9751322, 7 (S.D. Ill. Dec. 27, 2017) ("being forced to stand in raw sewage in his cell for over twenty-four hours could constitute an objectively serious deprivation of the minimum standards of decency if Plaintiff's testimony is believed by the jury"). However, both duration and mitigation play a part in the Eighth Amendment analysis. *See, e.g., Taylor*, 592 U.S. at 7-10 (case remanded to determine whether conditions were "compelled by necessity or exigency" and whether they could have been "mitigated, either in degree or duration"); *Johnson v. Prentice*, 29 F.4th 895, 904 (7th Cir. 2022) ("frequency, severity, [and] duration of the unsanitary cell conditions" must be considered); *Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997) ("[T]he duration of the condition . . . determines whether the conditions of confinement are unconstitutional."); *Stephens v. Cottey*, 145 F. App'x 179, 181 (7th Cir. 2005) ("As is the case under the Due Process Clause, a short-term deprivation is less serious for Eighth Amendment purposes than a long-term one.") (citations omitted).

The denials of the Motions to Dismiss are without prejudice and Defendants will be directed to file, or explicitly decline to file, a motion for summary judgment or other appropriate dispositive motion.[3]

Accordingly, it is hereby

**ORDERED** that the Defendants' Motions to Dismiss, Dkt. Nos. 31 and 50, be and are hereby **DENIED WITHOUT PREJUDICE**; and it is

**FURTHER ORDERED** that the Defendants must file, or explicitly decline to file, a motion for summary judgment or other appropriate dispositive motion within thirty (30) days of the entry date of this Order.

The Clerk is directed to send a copy of this Order to Plaintiff and to all counsel of record.

Entered this 5 day of November 2026.

Alexandria, Virginia

/s/

Rossie D. Alston, Jr.
United States District Judge

[3] If the defendants file a motion for summary judgment, such a motion should include the video evidence referenced in Mills Affidavit, Dkt. No. 42 at ¶¶ 1 and 3, and any other relevant video evidence as well. If there is no video evidence, Defendants must also explain its absence. The Fourth Circuit has been clear regarding video evidence and summary judgment motions stating that "'it defies logic and common sense that summary judgment was appropriate when the video evidence—core to [plaintiff's] theory of vindication for the underlying disciplinary offense—had yet to surface.'" *Shaw v. Foreman*, 177 F.4th 551, 553 (4th Cir. 2026) (quoting *Shaw v. Foreman*, 59 F.4th 121, 129 (4th Cir. 2023)).